UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RUSSELL GRANT FINNEGAN, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-1113-PPS-JEM |
| RANDALL C. HEAD, et al., | |
| Defendants. | |

OPINION AND ORDER

Russell Grant Finnegan, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, I must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Finnegan alleges various prosecutors, public defenders, private attorneys, law enforcement officials, and a judge violated his rights during the state court criminal proceedings in *State of Indiana v. Finnegan*, cause no. 66D01-2201-F6-000001 (Pulaski Sup. Ct. Jan. 3, 2022), available at: https://public.courts.in.gov/mycase/#/vw/Search (last

accessed Apr. 2, 2025). Although Finnegan doesn't provide much in way of background information, I've reviewed the state court docket (plus related filings) and find it necessary to discuss a bit of his history in the context of his current claims. I'm permitted to take judicial notice of public documents in screening a complaint. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts.")

Finnegan is, to put it mildly, highly litigious. Since 2020, he has filed over *forty civil cases* against a bevy of state court actors and other individuals associated with his criminal matters. His communications in both his civil and criminal cases prompted several state court judges to deem him an "abusive pro se litigant."[1] He also has racked up a rather an impressive record of obdurate behavior in litigation. He was, for example, held in indirect contempt of court.[2]

---

[1] For example, on October 12, 2021, Special Judge John D. Potter issued an "Abusive Pro Se Litigant Order" which took judicial notice of the "Abusive Pro Se Litigant Order entered by Special Judge Hall on September 28, 2021 [and] fourteen (14) other cause numbers involving Russell Finnegan finding that Russell Finnegan was an abusive *pro se* litigant in those cases," and found him to be an abusive pro se litigant in two additional cases. *See In re: Indirect Criminal Contempt of Russell Finnegan*, cause no. 66C01-2110-MC-000168 (Pulaski Cir. Ct. Oct. 12, 2021), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025).

[2] On January 27, 2023, and in a written order dated January 30, 2023, Finnegan was found guilty of indirect criminal contempt for sending "vulgar" letters to the clerk in an effort to "defy the authority of the court" which "disgraced and degraded the court, all in violation of IC 34-47-3-1 et seq." *See In re: Indirect Criminal Contempt of Russell Finnegan*, cause no. 66C01-2110-MC-000168 (Pulaski Cir. Ct. Oct. 12, 2021), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025). Finnegan was sentenced to 170 days of incarceration. *Id*.
    The Indiana Court of Appeals initially reversed that decision, finding it was an abuse of discretion for Special Judge Potter to have failed to appoint experts to conduct mental health evaluations prior to the bench trial. *See generally Finnegan v. State*, 221 N.E.3d 1232 (Ind. Ct. App. 2023). However, the Indiana Supreme Court vacated that opinion, held that the insanity defense statutes do not apply to indirect contempt proceedings, and affirmed the original decision of the trial court. *See generally Finnegan v. State*, 240 N.E.3d 1265 (Ind. 2024), *reh'g denied* (Dec. 20, 2024).

Perhaps most troubling is his conviction for felony intimidation of a judicial officer for which he received six years in prison on April 5, 2022. *See State of Indiana v. Russell Finnegan*, cause no. 66D01-2005-F5-000010 (Pulaski Sup. Ct. May 29, 2020), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025). In an opinion affirming the conviction, the Indiana Court of Appeals described Finnegan's conduct as follows:

> On April 9, 2020, Finnegan, an inmate in the Pulaski County Jail, sent a letter to the Honorable Mary Welker, judge of the Pulaski Circuit Court. At the time, Finnegan was the defendant in a criminal case pending before Judge Welker. In his letter, Finnegan stated: 'You put this letter in a court file and I will nail your ass for contempt. You are already going to get fucked up for criminal confinement.' (State's Ex. 1.) Finnegan also wrote: 'Send me your goddamn address so I can do business with you personally, appropriately.' (*Id.*)

*Finnegan v. State of Ind.*, 201 N.E.3d 1186, 1189 (Ind. Ct. App. 2023), *transfer denied*, 209 N.E.3d 1175 (Ind. 2023). Despite having counsel, Finnegan continued to file documents filled with "gratuitous profanity and insults" throughout the case. *Id.* at 1191-96.

In his current civil rights case, Finnegan takes issue with the charges brought against him and the way his criminal case was handled. He alleges a deputy prosecutor named Randall C. Head worked with an investigator (Michael Morphet) to bring two felony and two misdemeanor counts of intimidation against him in cause number 66D01-2201-F6-000001. Although not provided by Finnegan, the probable cause affidavit sheds additional light on the matter.[3] In it, Investigator Morphet attests he verified the incident report submitted by Sgt. Detective A. Heims. The incident report is

---

[3] Because the probable cause affidavit is available online to Indiana attorneys but not readily available online to the public—in the spirit of N.D. Ind. L.R. 7-1(f)—the clerk will be directed to attach a copy of that filing to this order as Exhibit A.

3

sworn under penalty of perjury. It indicates that Heims and Sheriff Jeffrey Richwine had spoken with Michael and Brenda Finnegan (Finnegan's parents) on December 20, 2021, about a threatening letter they had received in July from Finnegan. The handwritten letter was mailed from the Pulaski County Jail and begins:

> I can't wait to get out. When I get out I am going to drench my mommy in an excelerant (sic) and light her on fire. Then when my mommy is cooked just right I am going to purposefully extinguish her so she can die two to three weeks after the fact. Then my big brabe (sic) daddy is going to suck on the end of a shotgun with his purtty (sic) mouth. I love my mommy and my daddy just the same as they love me. Ha.Ha.Ha. just kidding.

*See* Ex. A at 4. The incident report further indicates:

> Brenda stated she received the letter around July 2021 when it was stamped, however, she held on to it along with several others. Brenda advised they were speaking with a lawyer about another incident in which they are being sued by Russell and they produced the letter to their attorney. Their attorney recommended they contact the Sheriff's Department due to the threats in the letter. Brenda stated she was hoping it would pass and they didn't have to move forward with the letter, however, they are going to attempt to obtain a Protection Order from Russell.

*Id*. Detective Heims spoke with the Pulaski County Jail Commander and obtained evidence confirming Finnegan had sent out mail near the time Brenda and Michael Finnegan received the letter. Based on the contents of the incident report, Investigator Morphet requested that charges of intimidation be filed against Finnegan. Those charges were filed on January 3, 2022. *See State of Indiana v. Russell Finnegan*, cause no. 66D01-2201-F6-000001 (Pulaski Sup. Ct. Jan. 3, 2022), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025).

4

According to Finnegan, Prosecutor Head requested "higher than normal bond" and also initiated twenty no-contact orders against Finnegan. ECF 1 at 3. Prosecutor Head's bond motion—which was filed on the state court docket and will be attached to this order as Exhibit B—provides his reasoning for the bond amount and lists the individuals for whom no-contact orders were requested. In relevant part, the motion further indicates that Finnegan had been charged in several criminal matters including "pointing a firearm and handcuffing innocent parties," intimidating others, violating no-contact orders, being an abusive pro se litigant, and being found in contempt of court. *See* Ex. B at 1. Specifically, it was alleged that Finnegan:

> [T]hreatened various judicial officers, members of law enforcement, court staff, an attorney of his who withdrew from his case, and members of his own family while an above listed case or cases have been pending. . . . [T]hreatened to 'arrest' people, burn a family member alive, kill and sexually abuse the corpse of a judicial officer, and so on . . .. [That] part of the Defendant's legal strategy is to attempt to frighten various people . . .. That the Defendant represents a credible threat to commit violence against various law enforcement and judicial officers.

*Id*. The State asked the court to order Finnegan to have no contact with the listed individuals, to "stay away from their home addresses, places of employment, or anywhere he knows them to be," and to refrain from "harassing or threatening any individual." *Id*. at 1–2.

On January 10, 2022, Judge Russell Bailey determined that probable cause existed for Finnegan's arrest. On January 14, 2022, a bail review hearing was held, at which Finnegan was represented by a public defender, Richard Ballard. The order related to that hearing—which was filed on the state court docket and will be attached as Exhibit

5

C to this order—indicates that Finnegan, through counsel, requested a continuance to allow him time to subpoena witnesses. Judge Bailey rescheduled the bond hearing and, in the interim, "grant[ed] the State's Motion for Higher Than Normal Bond and for Conditions of Bond until a hearing is held." *See* Ex. C at 1. Judge Bailey set Finnegan's bond at $50,000 cash. He also approved and entered the no-contact orders based on the information submitted in the State's motion. Although Finnegan claims Judge Bailey would not tell him who the victims associated with the no-contact orders were and would not give him a copy of the formal charging information, the docket shows this information was made part of the public record and was available to his attorney during the relevant proceedings.[4]

Finnegan claims Mr. Ballard, his public defender, was terminated as his counsel on February 11, 2022, for failing to advocate on his behalf and for making a comment about what would happen if Finnegan was released. Finnegan admits he told PD Ballard, "[T]he first thing I am going to do if released is go across the street to the court

---

[4] Moreover, the docket indicates that after several continuances for various reasons, Prosecutor Head moved to withdraw the State's motion for higher-than-normal bond stating, "[Finnegan] has been convicted for two separate felonies, has been sentenced in one felony case, and has had his bond revoked in the other since the State filed its motion. These circumstances make the motion moot." *See* Ex. D at 1. The motion was granted on May 16, 2022. *See State of Indiana v. Russell Finnegan*, cause no. 66D01-2201-F6-000001 (Pulaski Sup. Ct. Jan. 3, 2022), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025). Subsequently, as part of Finnegan's sentence—and by agreement of the parties—the no-contact orders pertaining to Brenda and Michael Finnegan were vacated. *See id.* Also, in accordance with the sentencing order, the remaining no-contact orders were either modified, reissued, or terminated. *See id.*; *see also e.g., N.E. v. L.W.*, 130 N.E.3d 102, 108 (Ind. Ct. App. 2019) ("Criminal no-contact orders can be imposed as a condition of a defendant's pre-trial release, an executed sentence, or probation, and such orders direct that the defendant refrain from 'any direct or indirect contact with an individual.' *See* Ind. Code §§ 35-33-8-3.2(a)(4), 35-38-1-30, and 35-38-2-2.3(a)(18) (2017), respectively.").

6

house and drag Mary Welker [a state court judge] back by her hair if I have to and have her booked for falsifying transcripts." ECF 1 at 4. On March 2, 2022, Stanley Campbell had the pleasure of being appointed Finnegan's new public defender.

On October 15, 2022, Finnegan was interviewed by Dr. Celestine DeTrara to determine whether he had a "mental desease (sic) or defect for a defense of insanity in cause 66D01-2201-F6-000001." *Id*. at 5. By this point, he had already been convicted in two of his other criminal cases and was serving his sentence at the Westville Correctional Facility. On January 14, 2023, Finnegan met with PD Campbell and asked him to "dismiss all the arbetrary (sic) NCO's and file for appointment of a special prosecutor." *Id*. Instead, PD Campbell tried to "manipulate" Finnegan into accepting a plea deal. *Id*. Finnegan refused.

On May 24, 2023, Dr. DeTrara performed the competency evaluation over Finnegan's objection that he was being coerced and was under duress. Several days later Finnegan was transported to the Pulaski County Justice Center where he met with PD Campbell and the new deputy prosecutor, Anthony J. Ennis. A plea deal was discussed and rejected. Depositions of his parents, Michael and Brenda Finnegan, were then conducted, during which they both testified they did not desire to have criminal charges filed against him.

During a pre-trial status conference on November 3, 2023, Finnegan questioned Judge Bailey about the no-contact orders, and Finnegan alleges "he lied to me stating these people are all related to the case." *Id*. at 7. Finnegan continued to ask PD Campbell

7

to have the no-contact orders dismissed, but PD Campbell ignored those requests. On December 8, 2023, he was terminated as Finnegan's counsel.

On December 5, 2024, a jury trial was held, and Finnegan was found "Guilty but Mentally Ill" of two counts of misdemeanor intimidation in violation of 35-45-2-1(a)(4). *See State of Indiana v. Russell Finnegan*, cause no. 66D01-2201-F6-000001 (Pulaski Sup. Ct. Jan. 3, 2022), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025). He was sentenced to a suspended sentence of 365 days imprisonment on each count to run concurrently with each other but consecutive with his prior sentences in cause numbers 66D01-2005-F5-000010 and 66C01-1910-F3-000014. *Id*. He was placed on probation for a period of 365 days. *Id*. On February 5, 2025, Finnegan filed a notice of appeal via counsel. *See Russell G. Finnegan v. State of Indiana*, cause no. 25A-CR-00282 (Ind. Ct. App. Feb. 5, 2025), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025). That appeal remains pending. *Id*.

Finnegan has sued Prosecutor Head, Prosecutor Gaumer, Prosecutor Ennis, Investigator Morphet, Sheriff Richwine, Detective Heims, PD Ballard, PD Campbell, Judge Bailey, and Attorney Kevin Tankersley for "punitive and exemplary damages." ECF 1 at 14.

As an initial matter, I must address the immunity issues related to several of the defendants. A person alleging a violation of a federal right may bring a civil action under 42 U.S.C. § 1983 to remedy that violation. However, § 1983 has limits on the types of violations it covers and on who may be sued. Finnegan has named Judge Bailey as a

8

defendant, but he cannot be sued for money damages under § 1983 for acts taken in his judicial capacity. "A judge has absolute immunity for any judicial actions unless the judge acted in absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). In this case, it is plain that Judge Bailey had jurisdiction over Finnegan's case. Finnegan complains that Judge Bailey set a higher-than-normal bond amount after his arrest, approved twenty allegedly meritless no-contact orders, and presided over his criminal case. But these are actions well within the scope of his judicial authority and are subject to immunity. *See, e.g., Cannon v. Newport*, 850 F.3d 303, 307 (7th Cir. 2017) ("[Plaintiff's] claim that the judge set excessive bail in violation of the Eighth Amendment also fails, because the defendants whom he sued are entitled to immunity, having acted either as lawyers for the state or in a judicial capacity."); *John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990) (same). Therefore, the claims against Judge Bailey must be dismissed.

A similar analysis applies to Finnegan's claims against the prosecutors. "Prosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Absolute immunity shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false testimony or

9

evidence." *Id*. (internal quotation marks and citation omitted). Because Finnegan's suit challenges the actions those attorneys took in bringing the criminal charges against him, requesting bond and related conditions such as the no-contact orders, discussing plea deals, and prosecuting the case—all undoubtedly part of the judicial phase of the criminal process—the claims against Prosecutor Head, Prosecutor Gaumer, and Prosecutor Ennis may not proceed either. *See Jones v. Cummings*, 998 F.3d 782, 787–88 (7th Cir. 2021) (recognizing that "Indiana's county prosecutors are state officials when they are prosecuting criminal cases" and holding that "filing and amending criminal charges against a defendant—are core prosecutorial functions" subject to absolute immunity even if the prosecutors engaged in "unlawful rogue conduct"); *see also Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 566–67 (7th Cir. 2022) (same); *Cannon*, 850 F.3d at 307 (lawyers for the state were entitled to immunity on allegations that bail request was excessive).

Finnegan's allegations that his public defenders acted in an incompetent manner during the state court criminal proceedings fail as well because unhappiness with his representation doesn't support a viable constitutional violation in a federal civil rights action. *See Polk County v. Dodson*, 454 U.S. 312, 325, n.18 (1981) (prisoners claiming wrongful incarceration due to ineffective assistance of counsel may be able to proceed under state tort law or habeas corpus proceedings, which "normally is the most important form of judicial relief," but such claims are not actionable under § 1983); *Walton v. Neslund*, 248 F. App'x 733, 733–34 (7th Cir. 2007) (affirming dismissal of federal claim related to attorney incompetence as "patently frivolous"). Moreover,

private defense attorneys—even appointed public defenders who are paid by the state—are not considered state actors under § 1983. *See Polk*, 454 U.S. at 325. All of which is to say, the claims against PD Ballard and PD Campbell are non-starters and must be dismissed.[5]

This leaves the claims against Investigator Morphet, Sheriff Richwine, and Detective Heims. First, Finnegan takes issue with Investigator Morphet for allegedly signing the probable cause affidavit without personal knowledge of the underlying events. However, as the attached probable cause affidavit makes clear, Investigator Morphet attests he verified the accuracy of the incident report submitted by Detective Heims—who signed his report under penalty of perjury—and further verified "that the statements attached, if any, were obtained from the witnesses whose names appear thereon." Ex. A at 1, 5. Finnegan's allegations against Investigator Morphet don't state a claim because "[a]n affidavit in support of a search warrant can rely on information from other officers and other hearsay if sufficiently reliable." *United States v. Schubert*, 528 F. App'x 613, 616 (7th Cir. 2013) (finding probable cause affidavit sufficient where it "incorporate[d] the [unverified] police report and [the investigator] swore to the affidavit, thus swearing to the information in the police report as well"); *see also United States v. Hollingsworth,* 495 F.3d 795, 805 (7th Cir.2007) ("[A] search warrant need not be based on first-hand observations.").

---

[5] Finnegan names Pulaski County Attorney Kevin C. Tankersley as a defendant in the caption of his complaint. However, he is not mentioned anywhere in the body of the complaint, so Finnegan has not stated any claims against him either.

11

Next, Finnegan claims he met with Detective Heims to report Prosecutor Gaumer for "mishandling" body camera evidence, a court reporter for "falsifying transcripts," and a local attorney for "harassing and stalking" him in the jail. ECF 1 at 8. Finnegan alleges Detective Heims "refused to make a report on my behalf and became defensive." *Id*. Finnegan doesn't have a constitutional right to bring charges against another individual or even to force the police to investigate an alleged crime. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). This is because the decision to prosecute is purely an executive function within the exclusive prerogative of the appropriate authority. *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998) *see also Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (plaintiff "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction"). These allegations don't state a claim.

Finnegan further alleges Sheriff Richwine and Detective Heims mishandled and/or purposefully misled Finnegan's parents when they encouraged them to request an order of protection for the letter he sent in July. He believes Sheriff Richwine and Detective Heims conspired with Investigator Morphet and the three prosecutors named as defendants to violate his due process rights by "initiating a selective, vindictive and malicious prosecution" without probable cause in retaliation for a previous federal lawsuit Finnegan filed against them (and many other judges, attorneys, and private

12

citizens).[6] ECF 1 at 9. In fact, he suggests all of the defendants conspired against him by initiating the charges, requesting and/or issuing the allegedly meritless no-contact orders, and by prosecuting his case. Even if some sort of plausible malicious prosecution or conspiracy type claim could be teased out of his allegations, the complaint would still need to be dismissed. *See e.g., Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (plaintiff cannot obtain an award of damages for wrongful incarceration or pursue any other claim that would necessarily imply the invalidity of his conviction unless it is reversed on direct appeal, expunged, or otherwise declared invalid); *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("To the extent [the plaintiffs] may be arguing that police violated their rights by giving false testimony, or that during trial prosecutors withheld material exculpatory evidence about misconduct during their interrogations, *Heck* indeed bars relief until a conviction is set aside."); *see also Thompson v. Clark*, 596 U.S. 36, 44 (2022) (federal claims for malicious prosecution brought pursuant to 42 U.S.C. § 1983 require that the prosecution was terminated in favor of the accused) (citing *Heck*, 512 U.S. at 484-85).

Here, as noted above, Finnegan was convicted of and sentenced on two counts of misdemeanor intimidation in violation of Ind. Code § 35-45-2-1(a)(4). That conviction has not been overturned and is currently pending on appeal. *See generally State of*

---

[6] He also claims twenty people associated with a prior federal lawsuit he had filed—including Investigator Morphet, Sheriff Richwine, and Detective Heims—were "part of [PD] Head's higher than normal bond motion" (ECF 1 at 8), but he doesn't explain how or why except to fault Detective Heims for refusing to take a report as discussed above. These allegations don't state a claim, and the other defendants he mentions in this section of the complaint are subject to absolute immunity.

*Indiana v. Finnegan*, cause no. 66D01-2201-F6-000001 (Pulaski Sup. Ct. Jan. 3, 2022), available at: https://public.courts.in.gov/mycase/#/vw/Search (last accessed Apr. 2, 2025). Thus, any implied malicious prosecution and/or conspiracy claims against any of the defendants must be dismissed. *See Mockbee v. Lee*, No. 20-2004, 2021 WL 5918556, at *1 (7th Cir. Dec. 15, 2021) (claim that state prosecutors, the judge, and the court reporter conspired to violate the plaintiff's constitutional rights by tampering with the evidence and the docket were barred by *Heck*); *Crowder v. Barrett*, No. 22-1899, 2023 WL 3145312, at *4 (7th Cir. Apr. 28, 2023) ("Finally, to the extent that [the plaintiff] intends to argue that he was unfairly prosecuted, that argument must fail because his robbery charge ended in a conviction that has not been overturned.") (citing *Thompson*, 596 U.S. at 49)).[7]

Finally, Finnegan asks me to accept supplemental jurisdiction over the alleged state law tort claims of "selective, vindictive and malicious prosecution," "intimidation," "false arrest," "abuse of process," and "interference of process." ECF 1

---

[7] To the extent Finnegan is attempting to assert a First Amendment claim of retaliatory arrest and/or retaliatory prosecution, those claims fail as well due to the existence of probable cause. As set forth in detail above, Investigator Morphet's probable cause affidavit indicates Sheriff Richwine and Detective Heims spoke with Finnegan's parents about a threatening letter they had received from Finnegan. The letter expressed Finnegan was going to set his mother on fire and shoot his father with a shotgun. Detective Heims then verified the timing of the sent mail with the Pulaski County Jail Commander. Based on the contents of the probable cause affidavit, there was probable cause to arrest Finnegan and charge him with misdemeanor intimidation at the very least. *See* Ind. Code § 35-45-2-1(a)(4), (c)(1) ("A person who communicates a threat with the intent . . . that another person be placed in fear that the threat will be carried out, if the threat is a threat [to] . . . unlawfully injure the person threatened."); *see also Lund v. City of Rockford, Ill.*, 956 F.3d 938, 944–48 (7th Cir. 2020) (a plaintiff bringing a claim for retaliatory arrest "must plead and prove the absence of probable cause for the arrest" and a finding of probable cause "defeats a retaliatory arrest claim in all but the most narrow of exceptions"); *Towne v. Donnelly*, 44 F.4th 666, 673 (7th Cir. 2022) ("Under established law, however, to bring a retaliatory prosecution claim under the First Amendment, a plaintiff [must] plead and prove an absence of probable cause for the underlying charge.").

at 12–13. However, even if his complaint states any plausible tort claims—a finding I do not reach—I decline to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); *see also Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (When all federal claims are dismissed, the court "has the discretion under § 1367(c)(3) to decline to hear related state-law claims or to retain them, though there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice."); *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010).

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Machine, Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (citations omitted); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024-25 (7th Cir. 2013). However, "that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). "[C]ourts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.* (citation omitted). I have considered the fact that "[t]he favorable-termination rule [in *Heck* and *Thompson*] is more than a procedural hurdle that plaintiffs can skirt with artful complaint drafting . . . . Rather, it is grounded in substantive concerns about allowing conflicting judgments." *Morgan v. Schott*, 914 F.3d 1115, 1120 (7th Cir. 2019). There is no basis to conclude that if given another opportunity, Finnegan could assert plausible claims—consistent with those he has already made under penalty of perjury—related to his outstanding

criminal conviction that would not be barred by *Heck/Thompson* or could present viable federal claims against the defendants that would survive immunity issues.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

Accordingly:

(1) the Clerk is DIRECTED to attach Exhibits A, B, C, and D to this order; and

(2) this case is DISMISSED pursuant to 28 U.S.C. § 1915A because Finnegan has sued defendants who are entitled to absolute immunity and because the complaint fails to state any viable claims that are not otherwise barred. However, any potential state law claims and any claims barred by *Heck* and/or *Thompson* are dismissed WITHOUT PREJUDICE.

SO ORDERED.

ENTERED: April 15, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT